UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| DEANNA L. JONES, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   Civil Action No.: 5:11-cv-174 |
| | ) |
| NATIONAL CONFERENCE OF | ) |
| BAR EXAMINERS AND ACT, INC., | ) |
| | ) |
|     Defendants. | ) |

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA
REGARDING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**Introduction**

The U.S. Department of Justice enforces, regulates, and provides technical assistance regarding the Americans with Disabilities Act, 42 U.S.C. § 12101-12213; 28 C.F.R. pt. 36 ("ADA"), including the application of Title III of the ADA to entities offering licensing examinations.[1] The United States files this Statement of Interest, pursuant to 28 U.S.C. § 517,[2] because this litigation implicates the proper interpretation and application of Title III of the ADA.

Under the ADA, professional licensing examinations must be administered in a manner that is accessible to persons with disabilities. 42 U.S.C § 12189. To ensure accessibility, entities

---

[1] *See* 42 U.S.C. § 12186(b) (requiring the Attorney General to issue regulations for Title III of the ADA); 42 U.S.C. § 12188(b) (providing for enforcement of Title III of the ADA by the Attorney General); 42 U.S.C. § 12206 (authorizing Attorney General to issue technical assistance under Title III).

[2] Title 28 U.S.C. § 517 states "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

offering licensing examinations are required to offer "modifications" to an examination or to provide appropriate "auxiliary aids" if needed so as to best ensure that the examination measures an individual with a disability's aptitude and achievement rather than the individual's disability. *See* 28 C.F.R. § 36.309(b)(1-3).  Under this statutory and regulatory framework, Plaintiff, Deanna L. Jones, has moved for a preliminary injunction requiring National Conference of Bar Examiners ("NCBE") and ACT, Inc. (collectively, the "Defendants") to allow her to use computer and screen reading software while taking the Multistate Professional Responsibility Exam ("MPRE"), along with other test modifications and accommodations.[3]

In NCBE's motion in limine in this case, (Docket No. 25, p. 2-4), NCBE has argued for a "reasonableness" standard when evaluating the accommodations offered to visually impaired plaintiffs seeking to take bar examinations.[4]  The United States does not agree that the testing accommodations offered to Plaintiff by NCBE should be analyzed under a "reasonableness" standard.  *See* NCBE's Motion in Limine (Docket No. 25), p. 2-4 (citing *Fink* and *Jaramillo*).  A reasonableness analysis ignores the plain language of the controlling statute and regulation.  The Court should evaluate whether NCBE here is offering appropriate auxiliary aids to "best ensure" that the MPRE measures Plaintiff's knowledge and abilities and not her disabilities.  Therefore, the United States urges the Court to analyze Plaintiff's Motion for Preliminary Injunction and the overall substantive merits of this case under the "best ensure" standard established by the Title III regulation and correctly applied by the Ninth Circuit in *Enyart v. National Conference of Bar*

---

[3] As explained above, § 12189 and 28 C.F.R. § 36.309 require modifications and auxiliary aids to ensure accessibility.  Hereinafter, we refer to such modifications and auxiliary aids as "testing accommodations" or "accommodations."

[4] Because of the parties' stipulation to dismiss ACT, Inc. as a defendant (Docket No. 16), the United States focuses this Statement of Interest on positions taken by NCBE.

*Examiners*, 630 F.3d 1153 (9th Cir. 2011) and, most recently, by the District Court for the District of Columbia in *Bonnette v. District of Columbia Court of Appeals*, No. 11–1053 (CKK), 2011 WL 2714896 (D.D.C. July 13, 2011).

## Statutory and Regulatory Background

Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. §12101(b)(1).  In enacting the ADA, Congress found that "discrimination against individuals with disabilities persists in such critical areas as employment . . . education . . . [and] communication" and further found that, "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity."  42 U.S.C. §§ 12101(a)(3), (a)(8).  Congress required the Attorney General and the Department of Justice to issue regulations implementing the ADA and expected that the interpretation of the ADA and requirements to eliminate discrimination against persons with disabilities would evolve over time with the advent of new technology. "The types of accommodations and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times."  H.R. Rep. No. 101-485(II), at 108 (1990).  Consistent with this approach, the Department of Justice made clear in the preamble for the Title III regulation that appropriate auxiliary aids should keep pace with emerging technology. *See* 28 C.F.R. pt. 36, app. C (2011) (auxiliary aids and services).

Section 309 of the ADA provides, "[a]ny person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."  42 U.S.C. § 12189.  The legislative history of Section 309 explains that "this provision was adopted in order to assure that persons with disabilities are not foreclosed from educational, professional, or trade opportunities because an examination or course is conducted in an inaccessible site or without an accommodation."  H.R. Rep. No. 101-485 (III), at 68-69 (1990).  Following notice and comment rulemaking, the Attorney General promulgated 28 C.F.R. § 36.309 to implement Section 309 of the statute.  That regulation provides that private entities offering examinations must select and administer these examinations so that  they "best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure)."  28 C.F.R. § 36.309(b)(1)(i).[5]  The regulation goes on to state that "[r]equired modifications to an

---

[5] The requirement that the examination must "best ensure" fair examination of the test-taker's knowledge was adopted from the Department of Education's Rehabilitation Act Section 504 requirements for admissions examinations in post-secondary institutions.  28 C.F.R. pt. 36, app. B at 715 (2009) (referring to 34 C.F.R. § 104.42(b)(3)).  Title I of the ADA includes similar language in the context of tests required for employment.  Section 12112(b)(7) of Title I requires "select[ing] and administer[ing] tests concerning employment in the most effective manner to ensure . . ." that the test reflects the disabled job applicants' or employees' aptitude and not their disabilities.  Therefore, in the context of examinations, the Department of Education's Rehabilitation Act regulations and the regulations informing Titles I and III of the ADA all include some variation of the "best ensure" standard and not a reasonableness standard.

4

examination may include changes in the length of time permitted for completion of the examination and adaptation of the manner in which the examination is given." 28 C.F.R. § 36.309(b)(2). The regulation further provides that private testing entities shall provide appropriate auxiliary aids "unless that private entity can demonstrate that offering a particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden." 28 C.F.R. § 36.309(b)(3). Section 36.309, its "best ensure" standard, and the analyses contained in *Enyart* and *Bonnette* should control the outcome of this case.

## Factual Background[6]

Plaintiff Deanna Jones is a law student at Vermont Law School with significant visual disabilities. (Compl. ¶ 11.) The Vermont Board of Bar Examiners requires applicants for admission to the bar to submit a passing score on the Multistate Professional Responsibility Exam. (Compl. ¶ 2.) Jones plans to take the Multistate Professional Responsibility Examination in August 2011. (Compl. ¶ 11.) NCBE develops and owns the MPRE and determines the formats in which the MPRE is offered. NCBE has contracted with ACT, Inc. to administer the MPRE in Vermont. (Compl. ¶ 12.)

Since 2003 and throughout law school Jones has used the screen access software Kurzweil 3000 and Zoomtext in combination to perform all academic and complex reading tasks. (Compl. ¶¶ 3, 16.) Without the use of this adaptive software, Jones alleges that she is unable to read in a manner comparable to other individuals and alleges that she will be unable to compete on an equal basis with other test takers. (Compl. ¶¶ 3, 6, 7.)

---

[6] The United States has not developed an independent factual record in this matter and, for purposes of this Statement of Interest, assumes the facts alleged in Plaintiff's Complaint to be true.

Jones submitted a request for accommodations, including the use of adaptive software, to ACT, Inc. on June 17, 2011. (Compl. ¶ 22.) In addition, counsel for Jones contacted NCBE's counsel to determine whether NCBE would conduct an individualized inquiry as to Jones' request. (Compl. ¶ 23.) NCBE's counsel responded by informing Jones' counsel that NCBE would not make an individualized inquiry as to Jones' request and that ACT, Inc. would decide Jones' request for accommodation. (Compl. ¶ 23.) ACT Inc. responded to Jones' request for accommodation with a list of accommodations it would be willing to provide. (Compl. ¶ 24.) Specifically, ACT Inc.'s representative stated in an email that ACT, Inc. "approved your request for extended time (triple), a single room, a transcriber, stop-the-clock breaks (2 at 15 minutes each), a magnifying glass and food/drink during the exam on the basis of a visual impairment and a learning disability." (Email of Susan Piper, ACT, Inc. Consultant, attached as Exhibit B to Declaration of Michelle B. Patton, Esq. and filed on July 1, 2011, Docket No. 2-2.) ACT, Inc.'s proposed accommodations did not include taking the MPRE on a computer equipped with the screen access software Kurzweil 3000 and Zoomtext, and therefore, according to Plaintiff's allegations, did not address Jones' disabilities to best ensure that her test results would reflect that which the test is designed to measure. (Compl. ¶ 24, 25.)

## Argument

**A.   The Court Should Apply the "Best Ensure" Standard, Not the "Reasonableness" Standard Advocated by the Defendants.**

When a court "reviews an agency's construction of the statute which it administers, it is confronted with two questions." *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984)). First, the court must determine whether the statute is "clear and unambiguous" ("Step 1"). *Chevron*, 467 U.S. at 842; *Kruse v. Wells Fargo Home Mortgage, Inc.,* 383 F.3d 49,

6

55 (2d Cir. 2004).  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43.

If, however, the provisions of the statute are unclear or ambiguous, then the court must decide whether "the agency's answer is based upon a permissible construction of the statute" ("Step 2").  *Chevron*, 467 U.S. at 843; *see also Kruse*, 383 F. 3d at 55 (same). Where Congress has made an "express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," such regulations are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to statute." *Chevron*, 467 U.S. at 844.  Because Congress expressly directed the Attorney General to promulgate regulations for Title III of the ADA, the Department's regulations and interpretation thereof are entitled to substantial deference.  *See Enyart v. Nat'l Conf. of Bar Exam., Inc.*, 630 F.3d 1153, 1160-61 (9th Cir. 2011) (affording Attorney General's ADA regulations deference under *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) in granting preliminary injunction to blind law student seeking to use screen reader during Multistate Bar Exam); *Auer v. Robbins*, 519 U.S. 452, 461 (1977) (agency's interpretation of its regulations "controlling unless plainly erroneous or inconsistent with the regulation").

With this analytical framework in mind, Defendant's argument (Docket No. 25, p. 2-4) that Plaintiff's Motion for a Preliminary Injunction should be denied because the testing accommodations NCBE and ACT, Inc. offered to Jones are reasonable as a matter of law should be rejected.  Defendant's proposed reasonableness analysis for testing accommodations subject to the requirements of Section 309 of the ADA impermissibly imports broader, inapplicable

ADA principles and ignores the proper standard for determining whether the examination is offered in an accessible manner.  The term "reasonable accommodations" – explicit in Title I – does not appear in the Title III statutory and regulatory provisions at issue in this case. Defendant NCBE argues here that case law and guidance interpreting the ADA's "reasonable accommodation" requirement under Title I of the ADA – the statute's employment provisions -- should control the court's analysis of testing accommodations under Title III.  NCBE is wrong. On the contrary, the controlling provisions, 42 U.S.C. § 12189 and 28 C.F.R. § 36.309, which govern the conduct of entities offering licensing examinations -- require NCBE to offer testing accommodations to best ensure that Plaintiff's aptitude or achievement level are reflected in the test results.

Section 36.309(b) requires that an examination be offered in a manner that provides individuals with disabilities an equal opportunity to demonstrate their knowledge or abilities to the same degree as others taking the MPRE.  *See* 28 C.F.R. pt. 36, app. C (2011) (examinations and courses).  *Enyart v. Nat'l Conference of Bar Exam'rs*, 630 F.3d 1153, 1163 (9th Cir 2011); *Bonnette v. Dist. of Columbia Court of Appeals*, No. 11–1053 (CKK), 2011 WL 2714896, *19 (D.D.C. July 13, 2011).  The regulation further articulates the requirement that a Title III testing entity must modify the manner in which the examination is given, or provide appropriate auxiliary aids "unless doing so would fundamentally alter the skills or knowledge the examination is intended to test or would result in an undue burden."  28 C.F.R. § 36.309(b)(2), (3).

Congress intended that the ADA give people with disabilities an equal opportunity to obtain professional or trade licenses and certifications without their disabilities impeding their

opportunity to demonstrate their abilities. When a test contains barriers that have nothing to do with the aptitudes or achievements it purports to measure, it violates this principle and denies individuals with disabilities the opportunity to practice trades and professions that require no more skill or ability than they in fact have. The standard contained in the regulations implementing Section 309 ensures that people with disabilities have access to high stakes licensing examinations and associated employment opportunities and thereby helps to realize a significant part of the ADA's promise.

### B. The Ninth Circuit Court of Appeals, affirming the District Court for the Northern District of California, and the District Court for the District of Columbia Have Rejected Defendants' Analysis of Their Obligations When Offering Licensing Examinations.

The suggestion that offered accommodations are reasonable as a matter of law under § 309 of the ADA has been rejected in several recent cases and should be rejected here. In *Enyart v. National Conference of Bar Examiners*, 630 F.3d 1153 (9th Cir 2011), and in *Bonnette v. District of Columbia Court of Appeals*, No. 11–1053 (CKK), 2011 WL 2714896 (D.D.C. July 13, 2011), the Ninth Circuit Court of Appeals and the District Court for the District of Columbia, confronted largely the same issues present here. In each case, the courts rejected defendant's reasonable accommodation standard and adopted the Department of Justice's interpretation of its statute and regulations.[7]

---

[7] Following the Ninth Circuit's *Enyart* decision, the District Court for the Northern District of California, in an extremely similar factual scenario to Jones' case, also rejected NCBE's arguments regarding the statutory and regulatory framework for provision of licensing examinations. *Elder v. National Conference of Bar Examiners*, No. C 11-00199 SI, 2011 WL 672662 (N.D. Cal. Feb. 16, 2011). In an earlier case involving Timothy Elder as one of the plaintiffs arguing for many of the same accommodations as Ms. Enyart and Jones when taking the Multistate Bar Examination, the District Court for the District of Maryland explained the need for a more complete factual record when rendering an oral opinion and issued a one page order denying plaintiffs' motion for a preliminary injunction and also denying NCBE's motion to dismiss. *Elder v. National Conference of Bar Examiners*, No. 1:10-cv-01418-JFM, Docket No. 49 (D. Md. July 13, 2010). The *Elder* case in the District of Maryland was later dismissed without

   1.     *Enyart v. National Conference of Bar Examiners*, 630 F.3d 1153 (9th Cir 2011).

*Enyart* involved a legally blind applicant to the bar of California, who requested a series of testing accommodations from NCBE and ACT, Inc. when taking the Multistate Bar Examination and the MPRE. As in Jones' case, the defendants in *Enyart* did not agree to allow Ms. Enyart to use a laptop equipped with assistive screen-reader software and screen magnification software. Addressing the standard to be applied to the plaintiff's testing accommodation request, the Ninth Circuit rejected the argument that § 12189 requires only "reasonable accommodation." *Enyart*, 630 F.3d at 1161-63. Instead, the Ninth Circuit applied the standard set out in the Department of Justice's examinations regulations that testing accommodations must be offered to "best ensure" the examination results accurately reflect applicants' aptitudes rather than disabilities. *Id.*

In granting deference to the Department of Justice's "best ensure" standard, the Ninth Circuit explained that "Congress did *not* incorporate 45 C.F.R. 84.12's "reasonable accommodation" standard into § 12189. *Id.* at 1162 (emphasis in original). To the contrary, *Enyart* holds that a requirement that testing entities "must provide disabled people with an equal opportunity to demonstrate their knowledge or abilities to the same degree as nondisabled people taking the exam—in other words, the entities must administer the exam 'so as to best ensure' that exam results accurately reflect aptitude rather than disabilities" is a "reasonable reading of § 12189's requirement that entities make licensing exams 'accessible.'" *Id.*

---

prejudice on mootness grounds because all three plaintiffs passed the Multistate Bar Examination as part of the Maryland bar examination. *Id.*, Docket No. 57 (D. Md. November 29, 2010). The Department of Justice is not aware of any other cases addressing the statutory and regulatory framework for entities offering licensing examinations other than *Enyart* and *Elder* in the courts of the Ninth Circuit, *Elder* in the District of Maryland, and *Bonnette* in the District Court for the District of Columbia. Defendants in *Enyart* have filed a petition for certiorari that has not been ruled on as of this filing.

      2.     *Bonnette v. District of Columbia Court of Appeals*, No. 11–1053 (CKK), 2011 WL 2714896 (D.D.C. July 13, 2011).

Cathyrn Bonnette is a legally blind individual who requested testing accommodations when taking an examination offered by the National Conference of Bar Examiners. Bonnette made her requests as she prepared to sit for the July 2011 District of Columbia Bar Examination. *Bonnette v. District of Columbia Court of Appeals*, No. 11–1053 (CKK), 2011 WL 2714896, at *6 (D.D.C. July 13, 2011). Bonnette's requests for testing accommodations, like those of Deanna Jones, included a request to use a screen-reading program installed on a laptop computer. *Id.* Ultimately, NCBE rejected Bonnette's request to use this screen-reading software. *Id.* at *8. In response, Bonnette filed suit and moved for a preliminary injunction.

On July 13, 2011, the District Court for the District of Columbia granted the preliminary injunction. The *Bonnette* Court, like the Ninth Circuit in *Enyart*, squarely rejected defendants' view that a visually impaired plaintiff's requests for testing accommodations should be evaluated under a "reasonable accommodation" standard. With respect to NCBE and other private entities (such as ACT, Inc.), the court explained that it "must defer to the Justice Department's regulation interpreting the requirements of § 12189." *Id.* at *15 (citations omitted).

The *Bonnette* Court also rejected defendants' reliance on inapposite case law such as *Fink v. N.Y. City Department of Personnel*, 855 F. Supp. 68 (S.D.N.Y. 1994) and *Jaramillo v. Professional Examination Service., Inc*., 544 F. Supp. 2d 126 (D. Conn. 2008), which are both relied upon by NCBE in its motion in limine (Docket No. 25, p. 2-4) in this matter. As *Bonnette* explains, "the plaintiffs in both *Fink* and *Jaramillo* brought claims under Section 504 of the Vocational Rehabilitation Act, 29 U.S.C. § 794(a), which explicitly embraced a "reasonable

accommodation" standard through its implementing regulations." *Bonnette*, 2011 WL 2714896, at *16. The *Bonnette* court explained that Congress adopted this reasonable accommodation standard in Title I of the ADA, which addresses employers. But, "Congress did not incorporate this standard into § 12189." *Id.* The court noted that although covered entities must make "reasonable modifications to policies, practices, and procedures, this general standard does not override the more specific regulatory guidance relating to the testing context." *Id.* The court explained that in the testing context, "it is essential that the content of the questions and the answer choices be communicated to the examinee in a clear and efficient manner so that the examinee can carefully evaluate the choices and select an answer within the time allotted for the examination." *Id.*

Finally, the United States urges this Court to apply the "best ensure" standard without allowing the application of the correct standard to be affected by lesser accommodations provided to Plaintiff in the past. As explained by the *Bonnette* Court, "[t]he fact that [Plaintiff] *could* take the [test] using a human reader does not mean that this accommodation would best ensure that her score reflected her achievement level rather than her visual impairment; [Plaintiff] is entitled to an auxiliary aid that allows her to perform at her achievement level, not just one that might be good enough for her to pass." *Id.* at *19 (emphasis in original).

## Conclusion

The clear weight of authority and the correct interpretation of the statutory and regulatory framework governing entities offering licensing examinations requires NCBE to offer Deanna Jones testing accommodations that "best ensure" that the MPRE reflects her abilities and not her impairments. This Court should reject arguments to the contrary.

Dated at Burlington, in the District of Vermont, this 20th day of July, 2011.

                    Respectfully submitted,

                    UNITED STATES OF AMERICA

                    THOMAS E. PEREZ
                    Assistant Attorney General
                    Civil Rights Division

                    TRISTRAM J. COFFIN
                    United States Attorney
                    District of Vermont

By:   /s/ Nikolas P. Kerest
        NIKOLAS P. KEREST
        Assistant U.S. Attorney
        District of Vermont
        P.O. Box 570
        Burlington, VT 05402-0570
        (802) 951-6725
        Nikolas.Kerest@usdoj.gov

## CERTIFICATE OF SERVICE

I, Diane Barcomb, Legal Assistant for the United States Attorney's Office for the District of Vermont, do hereby certify that on July 20, 2011 I filed the **STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA REGARDING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of the Court. The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

   Trevor Coe, Esq.
   Timothy R. Elder, Esq.
   Daniel F. Goldstein, Esq.
   Robert B. Hemley, Esq.
   Emily J. Joselson, Esq.
   Karen McAndrew, Esq.

And I also caused to be served by U.S. Postal Service, the following non-NEF parties:

   Robert A. Burgoyne, Esq.
   Fulbright & Jaworski L.L.P.
   801 Pennsylvania Avenue, NW
   Washington, DC 20004

   Caroline M. Mew, Esq.
   Fulbright & Jaworski L.L.P.
   801 Pennsylvania Avenue, NW
   Washington, DC 20004

   Michele B. Patton, Esq.
   Langrock Sperry & Wool, LLP
   111 South Pleasant Street
   P.O. Drawer 351
   Middlebury, VT 05753-0351

Dated at Burlington, in the District of Vermont, this 20th day of July, 2011.

                              */s/ Diane Barcomb*
                              DIANE BARCOMB
                              Legal Assistant